[No. D011398. Fourth Dist., Div. One. Apr. 8, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
ALFRED DAVID FISCALINI, Defendant and Appellant.

COUNSEL

Tracy L. Emblem, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Jeffrey Koch and Barry J. T. Carlton, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KREMER, P. J.**—A jury convicted defendant Alfred David Fiscalini of driving under the influence of alcohol causing injury to more than one victim (Veh. Code, §§ 23153, subd. (a), 23182), being under the influence of a controlled substance (Health & Saf. Code, § 11550), driving with a suspended license (Veh. Code, § 14601.1, subd. (a)), and possessing 28.5 grams or less of marijuana (Health & Saf. Code, § 11357, subd. (b)). The court found Fiscalini had two prior felony convictions. (Pen. Code, § 667.5, subd. (b).) Fiscalini appeals, contending the superior court erred in denying his motion to suppress evidence of his blood sample. We conclude the superior court should have granted Fiscalini's motion to suppress. We reverse Fiscalini's conviction of driving under the influence of alcohol causing injury to more than one victim. We affirm the remainder of the judgment.

I

FACTS

On April 9, 1989, on Imperial Avenue in San Diego, while his driving privilege was suspended Fiscalini drove his car into the lane of an oncoming car, resulting in a collision injuring the other driver and her passenger. Police arrived and perceived Fiscalini to be under the influence of either alcohol or drugs. Fiscalini was sweating and agitated with muscle rigidity and fluctuating mood. After giving Fiscalini several field sobriety tests, police arrested him. At the police station, an officer asked Fiscalini to complete either a blood, breath, or urine test. Fiscalini consented to a urine test and provided a sample for police. Later police asked Fiscalini to provide a blood sample because the officer believed that was the best means of testing blood-alcohol level and the officer also wanted to test the blood sample for drugs. The officer said he would take the blood sample even if Fiscalini refused. When Fiscalini refused and physically resisted, police restrained him and a laboratory technician took a blood sample. Chemical analysis revealed Fiscalini's blood-alcohol level was 0.1357 percent.

## II

### SEARCH AND SEIZURE OF BLOOD SAMPLE

Before trial Fiscalini asked the court to suppress evidence of his blood sample as assertedly the product of an unreasonable warrantless search and seizure. (Pen. Code, § 1538.5, subd. (a)(1).) Specifically, asserting the police withdrew his blood through infliction of pain and force despite his having voluntarily given a urine sample, Fiscalini contended the officers (1) violated his right to be free from an unreasonable search and seizure shocking the conscience (*Carleton* v. *Superior Court* (1985) 170 Cal.App.3d 1182, 1187 [216 Cal.Rptr. 890]) and (2) violated his right to choose the test to be given. After an evidentiary hearing, the court denied Fiscalini's motion.[1]

■ Fiscalini contends the superior court should have suppressed evidence of his blood sample. Fiscalini asserts police violated the Fourth Amendment and Vehicle Code section 23157 by forcibly drawing his blood after he had given a urine sample. We conclude the court erred in denying Fiscalini's motion to suppress evidence of his blood sample. (*Winston* v. *Lee* (1985) 470 U.S. 753 [84 L.Ed.2d 662, 105 S.Ct. 1611]; *Schmerber* v. *California* (1966) 384 U.S. 757 [16 L.Ed.2d 908, 86 S.Ct. 1826].)

■ "The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State." (*Schmerber* v. *California, supra*, 384 U.S. at p. 767 [16 L.Ed.2d at p. 917].) In *Schmerber* the defendant was arrested for driving under the influence of alcohol. At police direction, a blood sample was drawn from the defendant without his consent by a physician at a hospital. The United States Supreme Court was faced with the questions "whether the police were justified in requiring [defendant] to submit to the blood test, and whether the means and procedures employed in taking his blood respected relevant Fourth Amendment standards of reasonableness." (*Id.* at p. 768 [16 L.Ed.2d at p. 918].) ■ The Supreme Court essentially concluded the Fourth Amendment does not bar a warrantless compulsory seizure of blood for the purpose of a blood-alcohol test as long as the procedure is (1) done in a reasonable medically approved manner, (2) incident to a lawful arrest, and (3) based upon probable cause to believe the person is intoxicated. (*Id.* at pp. 766-772 [16 L.Ed.2d at pp. 917-921]; *People* v. *Superior Court* (1972) 6

---

[1] In denying Fiscalini's suppression motion, the court stated: "My evaluation of the evidence—that's testimony of all three witnesses—suggests to me that the manner in which it was taken, given the testimony that there was physical resistance, a struggling, and a verbal refusal to cooperate was not such as shocks the conscience. And it seems to me that the officers have a right to take the blood sample if they wish and the fact that he was given a urine test earlier doesn't rob them of that right."

Cal.3d 757, 761 [100 Cal.Rptr. 281, 493 P.2d 1145]; *Carleton* v. *Superior Court, supra,* 170 Cal.App.3d at p. 1185.)[2] However, the Supreme Court noted the interests in human dignity and privacy protected by the Fourth Amendment forbid searches involving intrusions beyond the body's surface based "on the mere chance that desired evidence might be obtained. In the absence of a clear indication that in fact such evidence will be found, these fundamental human interests require law officers to suffer the risk that such evidence may disappear unless there is an immediate search." (*Schmerber* v. *California, supra,* 384 U.S. at pp. 769-770 [16 L.Ed.2d at p. 919].) The Supreme Court also stated: "That we today hold that the Constitution does not forbid the States minor intrusions into an individual's body under stringently limited conditions in no way indicates that it permits more substantial intrusions, or intrusions under other conditions." (*Id.* at p. 772 [16 L.Ed.2d at p. 920].)[3]

In *Winston* v. *Lee, supra,* 470 U.S. 753, the prosecution sought to compel a defendant suspected of attempted armed robbery to undergo a surgical procedure under general anesthesia to remove a bullet lodged in his chest. The Supreme Court stated: "The reasonableness of surgical intrusions beneath the skin depends on a case-by-case approach, in which the individual's interests in privacy and security are weighed against society's interests in conducting the procedure. In a given case, the question whether the community's need for evidence outweighs the substantial privacy interests at stake is a delicate one admitting of few categorical answers." (*Id.* at p. 760 [84 L.Ed.2d at p. 669].) Noting the government established probable cause for the search and provided adequate procedural protections, the Supreme Court focused on balancing the extent of the intrusion on the defendant's privacy interests against the prosecution's need for the evidence. (*Id.* at p. 763 [84 L.Ed.2d at pp. 670-671].) The Supreme Court concluded the prosecution did not establish searching for evidence of the crime by the contemplated surgery would be reasonable under the Fourth Amendment. (*Id.* at p. 766 [84 L.Ed.2d at pp. 672-673].) The court found the intrusion on defendant's privacy interests was "severe" although the operation's medical risks were "apparently not extremely severe." (*Ibid.* [84 L.Ed.2d at pp. 672-673].) However, the court found—while the bullet might be useful to the prosecution—the strength of other evidence in the case

---

[2] In *People* v. *Deltoro* (1989) 214 Cal.App.3d 1417, 1425 [263 Cal.Rptr. 305], the appellate court stated: "[I]f there is probable cause to believe that a person committed driving under the influence of alcohol, the taking of such person's blood is valid regardless of whether that person is first formally placed under arrest."

[3] In *People* v. *Trotman* (1989) 214 Cal.App.3d 430 [262 Cal.Rptr. 640], the court characterized *Schmerber* as fundamentally an exigency case: "[T]he court [in *Schmerber*] relied almost exclusively on the exigency created by the evanescent nature of blood alcohol and the danger that important evidence would disappear without an immediate search." (*Id.* at p. 436.)

undercut the government's argument surgical retrieval of the bullet was necessary. (*Id.* at pp. 765-766 [84 L.Ed.2d at pp. 671-672].)

■ Applying the balancing test of *Winston* v. *Lee, supra,* 470 U.S. 753, to the evidence before the superior court on Fiscalini's motion to suppress, we conclude under the circumstances here the People did not demonstrate a need for Fiscalini's blood sample warranting the blood draw without his consent. As in *Winston,* the evidence here supports a finding police had probable cause to believe Fiscalini was intoxicated and lawfully arrested him. The record also supports a finding the laboratory technician drew Fiscalini's blood in a reasonable medically approved manner. The superior court also reasonably rejected Fiscalini's contention the police took his blood sample by way of excessive force shocking the conscience.[4] However, similar to the situation in *Winston* v. *Lee, supra,* the People here did not demonstrate sufficient need to withdraw Fiscalini's blood without his consent after he provided a urine sample.[5]

At the suppression hearing, Police Officer Moberly testified he sought to draw Fiscalini's blood—despite Fiscalini's earlier providing a urine sample—because blood was the best test for alcohol. However, the officer's opinion blood was the best test for detecting alcohol was not sufficient to show any need to take Fiscalini's blood sample after he already provided a

---

[4] "[T]o restrain a defendant reasonable force may be necessary to properly withdraw a blood sample from an actively resisting defendant." (*Carleton* v. *Superior Court, supra,* 170 Cal.App.3d at p. 1192.) When Fiscalini refused to take a blood test and became uncooperative, police obtained approval from a supervisor for a forced blood draw. The supervisor observed the blood draw to ensure nothing out of the ordinary occurred. Police handcuffed Fiscalini and walked him to a chair. Police made Fiscalini sit in the chair with his hands behind the chair's back. It did not take much force. Fiscalini struggled. Police placed a baton in front ·of the chair to keep Fiscalini from kicking. The laboratory technician drew blood from Fiscalini's arm. From this evidence the superior court properly found the police did not use more force than necessary to overcome Fiscalini's resistance and the restraints used by police were reasonable. (*Id.* at pp. 1188-1192; *People* v. *Ryan* (1981) 116 Cal.App.3d 168, 183 [171 Cal.Rptr. 854]; *People* v. *Kraft* (1970) 3 Cal.App.3d 890, 897 [84 Cal.Rptr. 280].)

[5] The People contend the blood test was proper because Fiscalini refused to provide the second void required for a valid urine test. (*McConville* v. *Alexis* (1979) 97 Cal.App.3d 593, 601 [159 Cal.Rptr. 49]; Cal. Code Regs., tit. 17, § 1219.2, subd. (a).) However, the record of the suppression motion hearing contains no evidence indicating the police requested a second void or Fiscalini refused to give a second urine sample. We also note the superior court effectively found Fiscalini was given a urine test before police took his blood sample.

At oral argument the People contended in reviewing the propriety of the ruling at the suppression hearing we may consider evidence presented later at trial on the issue whether Fiscalini refused to provide a second urine void. However, the cases cited by the People—*People* v. *Wright* (1990) 52 Cal.3d 367, 391-392 [276 Cal.Rptr. 731, 802 P.2d 221], and *Green* v. *Superior Court* (1985) 40 Cal.3d 126, 137-138 [219 Cal.Rptr. 186, 707 P.2d 248]—do not stand for that proposition. We are not aware of any case permitting a reviewing court to glean evidence from later proceedings to rescue an erroneous suppression ruling. We are also unaware of anything in this record suggesting the suppression motion was renewed at trial. Thus, our review is limited to the evidence before the court at the suppression motion hearing.

urine sample. Under the implied consent law a person lawfully arrested for driving under the influence of alcohol has the choice of submitting to a blood, breath, or urine test. (Veh. Code, § 23157, subd. (a)(2)(A).) Enactment of the implied consent law is tantamount to governmental acknowledgement a urine test is functionally equivalent of a blood test for evidentiary purposes with respect to blood-alcohol level. (*Hernandez* v. *Department of Motor Vehicles* (1981) 30 Cal.3d 70, 77 [177 Cal.Rptr. 566, 634 P.2d 917].)[6] Thus, having already obtained one sample from Fiscalini with his consent, the government did not demonstrate any need to force him to undergo a second intrusion. (*Winston* v. *Lee, supra,* 470 U.S. at pp. 765-766 [84 L.Ed.2d at pp. 761-763].)[7]

At the suppression hearing, Police Officer Moberly also testified he had Fiscalini's blood drawn to test for drugs in addition to alcohol. However, even assuming the police were looking for evidence Fiscalini was under the influence of a controlled substance, at the suppression hearing the People made no showing a blood sample in addition to the urine sample already provided was necessary for that purpose. Under Vehicle Code section 23157, subdivision (a)(2)(B), a person lawfully arrested for driving under the influence of any drug or the combined influence of an alcoholic beverage and any drug has the choice of submitting to a blood, breath, or urine test. Again, the statute reflects governmental acknowledgement a urine test is the functional equivalent of a blood test for evidentiary purposes with respect to the presence of drugs in the person's system.[8] Further undercutting any

---

[6]Despite the legality in certain circumstances under *Schmerber* v. *California, supra,* 384 U.S. 757, of forcibly removing a blood sample under appropriate medical procedures from a driver without his consent, the Legislature "recognized that 'such an episode remains an unpleasant, undignified and undesirable one.' [Citation.]" (*Hernandez* v. *Department of Motor Vehicles, supra,* 30 Cal.3d at p. 77.) In enacting the implied consent law "the Legislature sought to obviate these consequences for the driver and 'avoid the possible violence which could erupt if forcible tests were made upon a recalcitrant and belligerent inebriate' [citation], *while at the same time preserving the state's strong interest in obtaining the best evidence of the defendant's blood alcohol content at the time of the arrest.*" (*Ibid.,* italics added.)

[7]Fiscalini contends evidence of his blood sample should have been suppressed as resulting from a violation of the implied consent law because his blood sample was not the product of his chosen test but instead was taken after he already completed a urine test. Mere noncompliance with the implied consent law without more does not implicate any constitutional issue or invoke any statutory exclusionary rule. (*People* v. *Puccinelli* (1976) 63 Cal.App.3d 742, 746 [135 Cal.Rptr. 534]; *People* v. *Brannon* (1973) 32 Cal.App.3d 971, 975 [108 Cal.Rptr. 620].) However, the existence of the implied consent law bears upon the element of the government's need for the blood sample under the balancing test articulated in *Winston* v. *Lee, supra,* 470 U.S. 753, and supports a conclusion the blood draw here was an unreasonable intrusion under the Fourth Amendment.

[8]Vehicle Code section 23157, subdivision (a)(2)(C), is also of interest. That statute provides in pertinent part: "A person who chooses to submit to a breath test may also be requested to submit to a blood or urine test if the officer has reasonable cause to believe that the person was driving under the influence of any drug or the combined influence of an alcoholic beverage and any drug *and if the officer has a clear indication that a blood or urine test will*

suggestion of need for the blood sample to disclose the presence of drugs is the fact at trial the People relied on evidence of the *urine* sample to prove Fiscalini was under the influence of methamphetamine.

On this record the superior court should have granted Fiscalini's motion to suppress evidence of his blood sample. Since we cannot say introduction of such evidence was harmless beyond a reasonable doubt, Fiscalini's conviction for driving under the influence of alcohol causing injury to more than one victim must be reversed.[9] We uphold the other convictions as they were not tainted by the constitutional error.

## DISPOSITION

The conviction for driving under the influence of alcohol causing injury to more than one victim is reversed. The remainder of the judgment is affirmed.

Wiener, J., and Todd, J., concurred.

---

*reveal evidence of the person being under the influence. The officer shall state in his or her report the facts upon which that belief and that clear indication are based.*" (Italics added.)

[9] In light of our finding the superior court should have suppressed evidence of Fiscalini's blood sample, we do not reach his contention the court committed instructional error with respect to the charge of driving under the influence.