Filed 2/24/14  P. v. Christian CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ABUNDIO CHRISTIAN,<br><br>    Defendant and Appellant. | G047683<br><br>(Super. Ct. No. 10WF2352)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Gregg L. Prickett, Judge.  Affirmed as modified.

Sarah A. Stockwell, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Kristine Gutierrez and Warren Williams, Deputy Attorneys General, for Plaintiff and Respondent.

After the trial court denied Abundio Christian's motion to suppress evidence of his blood test results, a jury convicted him of driving under the influence and driving with a blood-alcohol level of .08 percent or above with an enhancement for driving with a blood-alcohol level of .20 percent as to each count. The jury also found true allegations Christian had a prior serious conviction within the meaning of the "Three Strikes" law, and that he refused a peace officer's request to submit to and complete a chemical test.[1]

The trial court denied Christian's motions to reduce the felony conviction to a misdemeanor pursuant to Penal Code section 17, subdivision (b),[2] and to strike his prior serious felony conviction for sentencing purposes (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*)). Ultimately, Christian received a determinate term of six years in prison, and the court awarded custody credits in the amount of 57 actual days, plus 28 conduct credit for a total of 85 days.[3]

On appeal, Christian challenges the trial court's ruling on his motion to suppress the results of his blood test and to strike his prior conviction. He also claims he is entitled to additional conduct credits under a recent amendment to section 4019. We affirm the judgment as modified.

---

[1] The jury found not true an allegation Christian personally inflicted great bodily injury.

[2] All further statutory references are to the Penal Code.

[3] The court's minute order and abstract of judgment lists 61 actual days, plus 30 days conduct credit for a total of 91 days. When there is a discrepancy between the oral pronouncement of a sentence and the minute order or the abstract of judgment, the oral pronouncement controls. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) Consequently, we order the abstract of judgment corrected to reflect the trial court's oral pronouncement of sentence.

**FACTS**

In the early morning hours of September 20, 2010, Christian collided with a car driven by Jillian P. As a result of the collision, Jillian lost control of her car and it rolled over. She sustained multiple injuries to her face, stomach, arms, and legs.

Police officers were dispatched to the scene at approximately 12:53 a.m. One of these officers asked Christian if he had consumed alcohol before the crash. Christian said he had. The officer smelled alcohol on his breath and noticed that he had watery, bloodshot eyes. In light of these symptoms of intoxication, and considering the fact of the accident, the officer decided to ask Christian to perform standard field sobriety tests. During the administration of the tests, Christian repeatedly lost his balance, swayed back and forth, and generally failed each field sobriety test he performed. Based on a totality of the circumstances, the officer believed Christian to be under the influence and impaired.

After arresting Christian for driving under the influence, the officer gave Christian the choice of either a blood test or a breath test. Christian said he wanted the blood test, and the officer took him to the Huntington Beach jail for the blood draw. However, after arrangements had been made to take his blood, Christian told the officer he wanted a breath test instead because he feared needles.[4] The officer took Christian to a holding cell to begin a 15-minute observation period. The officers testified the observation period is necessary to ensure the individual does not burp, belch, regurgitate or vomit alcohol into his or her mouth because doing so affects the accuracy of the breath test.

During the observation period, the officer heard Christian belch repeatedly, and he complained of stomach pain and said he had acid reflux. The officer warned Christian that if he continued to belch and burp he would be unable to take the breath test,

---

[4] The officer also testified Christian had numerous tattoos on his arm.

3

but Christian continued to belch and burp. The officer then told Christian he would need to submit to a blood test. Christian refused the blood test and insisted on a breath test. Jail personnel placed Christian in a chair and restrained him.

At around 2:00 a.m., the arresting officer advised Christian of the penalties for refusing to submit to a chemical test. Afterward, Christian's blood was drawn without incident at approximately 2:18 a.m. Subsequent analysis revealed Christian had a blood-alcohol concentration of .206 percent. The prosecution's forensic scientist testified that even without the blood test results, Christian's performance on the field sobriety tests suggested he was under the influence of alcohol and impaired at the time of the collision.

## DISCUSSION

*1. Motion to Suppress*

Christian filed a pretrial motion to suppress the results of his blood test. He claimed the police officers "unlawfully and unnecessarily extracted" his blood without a warrant despite his expressed preference for a breath test and without a showing of exigent circumstances. The prosecution asserted the police officers' forcible extraction of Christian's blood did not violate his right to be free of unreasonable search and seizures as guaranteed by the Fourth Amendment.

After considering the parties' arguments and moving papers, the trial court denied the motion without a hearing. The ruling was based, at least in part, on long-standing and then applicable United States Supreme Court precedent. (*Schmerber v. California* (1966) 384 U.S. 757 (*Schmerber*).)

In *Schmerber*, the petitioner was involved in a traffic accident and transported to a nearby hospital. He was arrested for driving under the influence of alcohol while undergoing treatment for his injuries. At the same time, a police officer directed a physician to withdraw a blood sample for purposes of determining the petitioner's blood-alcohol level, and the results of the test were used at trial. The United

4

States Supreme Court rejected petitioner's claim that a compelled blood draw constitutes an unreasonable search and seizure, and approved the "warrantless compulsory seizure of blood for the purpose of a blood-alcohol test if the procedure (1) is done in a reasonable, medically approved manner, (2) is incident to a lawful arrest, and (3) is based upon reasonable belief the arrestee is intoxicated. [Citations.]" (*People v. Ford* (1992) 4 Cal.App.4th 32, 35-36 (*Ford*).)

In April 2013, over three years after Christian's arrest and 11 months after the trial court's ruling on his motion to suppress, the United States Supreme Court decided *Missouri v. McNeely* (2013) __ U.S. __ [133 S.Ct. 1552] (*McNeely*). In *McNeely*, the court determined the natural metabolic elimination of alcohol from the blood does not present a per se emergency justifying a warrantless, forcible blood draw. (*Id.* at p. __ [133 S.Ct. at p. 1568].) Rather, consistent with general Fourth Amendment principles, exigency in the context of "drunk-driving cases" must be determined on a case-by-case basis in light of a totality of the circumstances. (*Id.* at p. __ [128 S.Ct. at p. 1556].)

Relying on *McNeely*, Christian argues that under a totality of the circumstances the prosecution failed to demonstrate any exigency in his case. He asserts "[a] delay of another hour would not have made a significant difference in the results, a fact that is undisputed." We disagree.

First, the delay of an hour would have affected the results, although Christian's expert witness testified the difference would not have been significant. But more importantly, we need not determine whether the *McNeely* holding that the elimination of alcohol from the blood does not constitute a per se exigent circumstance justifying a warrantless blood draw is a new procedural rule of law to be applied retroactively to Christian's case. Regardless of our determination of that issue, the police conduct here fell within the "good faith" exception to the exclusionary rule. (See *United States v. Leon* (1984) 468 U.S. 897.)

5

Prior to *McNeely,* California courts regularly allowed warrantless blood draws where the factors outlined in *Ford* were satisfied. (See *People v. McHugh* (2004) 119 Cal.App.4th 202, 212; *People v. Sugarman* (2002) 96 Cal.App.4th 210, 216-217.) In short, Christian identifies no California case law which suggests that, in the circumstances presented here, a warrantless nonconsensual blood draw was not permissible. Binding appellate precedent specifically authorized the officers' actions here. Thus, despite the change in the law, the police acted reasonably. (See *Davis v. United States* (2011) 131 S.Ct. 2419, 2429.) Because they acted reasonably, no "'appreciable deterrence'" would result from the application of the exclusionary rule in this case. (*Id.* at p. 2426.) Consequently, the trial court properly denied Christian's motion to suppress the results of the blood draw, and those results were properly admitted into evidence at trial.

*2. Romero Motion*

The information alleged Christian had a 1998 felony burglary conviction, which qualified as a prior serious felony within the meaning of the Three Strikes law. Christian filed a pretrial motion to strike the burglary conviction pursuant to section 1385 in an attempt to negotiate an agreement to plead guilty.

At a hearing on the issue, Christian's counsel argued his client had done his time and changed his life since his burglary conviction, and that the imposition of the sentence required by the Three Strikes law would be disproportionate to the instant offense. Counsel also submitted several letters in support of his client. The trial court acknowledged several factors in mitigation, but the trial court properly refused to negotiate a plea bargain with Christian. (§§ 667, subd. (g), 1170.12, subd. (e); *People v Allan* (1996) 49 Cal.App.4th 1507; *People v Garcia* (1999) 20 Cal.4th 490, 499.) Instead the trial court was willing to give an indicated sentence. (*People v. Trausch* (1995) 36 Cal.App.4th 1239, 1247, fn. 9.) After allowing counsel a chance to discuss the situation with his client over night, Christian decided to proceed to trial.

At the posttrial sentencing hearing, the trial court acknowledged its discretion to strike Christian's prior felony conviction, but concluded Christian's case was not outside the spirit of the Three Strikes law. After a thorough recitation of the appropriate factors, including Christian's criminal record and the circumstances of the current conviction, the court denied Christian's motion.

On appeal, Christian concedes the trial court considered "the various factors involved in deciding" a *Romero* motion. He simply argues the court's ruling was irrational because the judge did not give sufficient weight to the various mitigating factors. This does not establish an abuse of discretion.

Section 1385, subdivision (a) (section 1385(a)), permits a trial court to strike prior felony conviction allegations in cases brought pursuant to the Three Strikes law. (*Romero, supra,* 13 Cal.4th at p. 530.) "A court's discretion to strike prior felony conviction allegations in furtherance of justice is limited. Its exercise must proceed in strict compliance with section 1385(a), and is subject to review for abuse." (*Ibid.*) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) There is nothing arbitrary or irrational about the trial court's determination in this case.

According to the probation report, Christian's brushes with the law began in 1995 when he was 20 years old. In January of that year, police officers responded to a vandalism report at an apartment complex. Once there, the officers contacted a woman who was getting out of Christian's car and appeared to be under the influence of a controlled substance. They searched her and found narcotics paraphernalia. Christian, the driver of the car, also appeared to be under the influence of a controlled substance, and a search of his person yielded a baggie of methamphetamine. Although he was charged with being under the influence and possession of a controlled substance, Christian received a grant of diversion under section 1000 and suffered no conviction.

Two years later, he was arrested for driving under the influence of marijuana. The arresting officers found a registered firearm in his car. According to Christian, he received a grant of probation and no conviction appears on his record for this offense. A few months later, he was charged with cultivation of marijuana and possession for sale when officers found several small marijuana plants in his residence. It appears these charges were later dismissed and did not result in a conviction.

Just four months after his arrest for cultivation and possession for sale of marijuana, Christian was convicted of possession of methamphetamine for sale and possession of controlled substance while armed with a loaded weapon. According to police records, a search warrant was served at Christian's home and officers found him to be in possession of several baggies of methamphetamine in various amounts, a cutting agent, multiple gram scales, pay/owe sheets, a .45-caliber semiautomatic pistol, a loaded .22-caliber rifle, a nine-millimeter semiautomatic pistol, ammunition, multiple pagers, and approximately $2,000 in cash.

While Christian was on bail for these charges, a confidential informant advised police that Christian would be delivering methamphetamine to a certain location and carrying a loaded firearm. Officers set up surveillance of his anticipated drop spot, and when Christian arrived, the officers contacted him and his two companions. They found a loaded nine-millimeter handgun on Christian's person, as well as an ounce of methamphetamine and a gram scale. Ultimately, Christian was sentenced to seven years in state prison as a result of this case and the one for which he was on bail at the time.

Finally, in late 1997, before being sentenced for the above offenses, Christian broke into a home where he believed he would find a lot of money. This act resulted in his 1999 serious felony conviction and a violation of parole.

As is apparent from a review of Christian's record, the probation report, and the circumstances of the current offense, factors the trial court carefully considered, Christian's case does not fall outside the spirit of the Three Strikes law. He has had

8

numerous opportunities to rehabilitate himself and find new ways to enjoy his life. Time and again, he has chosen to act in ways that place at great risk not only his own life, but also the lives of others. The fact the current case did not involve more serious injuries or death was a result of chance, not a predetermined desire to live a better life.

"To exercise the power of judicial discretion, all material facts and evidence must be both known *and considered*, together with legal principles essential to an informed, intelligent and just decision." (*People v. Davis* (1984) 161 Cal.App.3d 796, 804.) The trial court's inquiry into the propriety of striking a prior conviction alleged pursuant to the Three Strikes law required the court to assess "'whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.'" (*People v. Carmony, supra,* 33 Cal.4th at p. 377, citing *People v. Williams* (1998) 17 Cal.4th 148, 161.)

In this case, the trial court considered the relevant factors and made a decision based on its balancing the circumstances of Christian's criminal record, and his background and social history, against the necessity to protect the public. Nothing Christian cites or argues supports his contention the trial court's ultimate determination constitutes an abuse of discretion.

*3. Calculation of Conduct Credits*

Section 4019 permits a defendant to earn additional presentence credit for good behavior and work performance while incarcerated. (§ 4019, subds. (b), (c).) The credits authorized by section 4019 collectively are referred to as "'[c]onduct credit.'" (*People v. Dieck* (2009) 46 Cal.4th 934, 939, fn. 3.) The version of section 4019 in effect at the time Christian committed his crime allowed for six days of custody credit for every four days of custody. (Former § 4019, subds. (b), (c), (f); Stats. 1982, ch. 1234, § 7 p.

9

4553.)  The statute has been twice amended since then, the most recent amendment in conjunction with the realignment legislation.  (§ 4019, subd. (h); see Stats. 2011 ch. 15, § 482; Stats. 2011, ch. 39, § 53; Stats. 2011-2012 1st Ex. Sess., ch. 12, § 35.)

Currently, subdivision (f) of section 4019 provides, "that if all days are earned under this section, a term of four days will be deemed to have been served for every two days spent in actual custody."  Christian acknowledges the current statute applies only to defendant's whose crimes were committed on or after October 1, 2011 by its express terms.  (§ 4019, subd. (h).)  He claims a classification based on offense date violates constitutional principles of equal protection because it is arbitrary and not rationally related to a legitimate public purpose.

However, an opinion from this court (*People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 55-56) and two from the California Supreme Court that addressed the amendment (*People v. Lara* (2012) 54 Cal.4th 896, 906, fn. 9; *People v. Brown* (2012) 54 Cal.4th 314, 328-330) have concluded otherwise.  We agree with the reasoning and result in these cases.  Consequently, we reject Christian's equal protection claim and affirm the trial court's award of custody credits.

## DISPOSITION

The clerk of the superior court is directed to prepare an amended abstract of judgment to reflect the award of presentence custody credits in the amount of 57 days actual custody, plus 28 days conduct credit, for a total of 85 days, and to forward a certified copy to the Department of Corrections and Rehabilitation.  As modified, the judgment is affirmed.


                                        THOMPSON, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


BEDSWORTH, J.

11