[No. B148414. Second Dist., Div. Six. Jan. 24, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
GARY ALLEN SUGARMAN, Defendant and Appellant.

**COUNSEL**

Norma Bishop, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Kyle S. Brodie, and Lauren E. Dana, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GILBERT, P. J.**—Gary Allen Sugarman appeals a judgment after pleading guilty to driving under the influence with a prior (Veh. Code, §§ 23152, subd. (a), 23550.5), a felony, and admitting two prior felony convictions

(§ 23152).[1] We conclude that the highway patrol officer did not violate the Fourth Amendment by requiring Sugarman to take a blood test at a hospital after Sugarman frustrated the officer's attempts to conduct a breath analyzer test. The trial court properly denied Sugarman's motion to suppress the results of the blood test. We affirm.

## FACTS

California Highway Patrol Officer Anthony Pedeferri stopped Sugarman's car because he was driving 79 miles per hour in a 55-mile-per-hour zone. When he approached Sugarman, Pedeferri smelled the odor of alcohol on Sugarman and in his car. He gave Sugarman five field sobriety tests but Sugarman did not properly complete them. Pedeferri arrested Sugarman and advised him of his options under the implied consent law to select one of three tests to determine the blood-alcohol concentration (BAC) of his blood. Sugarman initially said he did not want to take any tests, but he eventually agreed to take a breath test.

Pedeferri instructed Sugarman to seal his mouth around the tube to blow into the machine. But Sugarman did not follow these instructions. He blew air out the side of his mouth and not into the tube. The air he blew into the machine was not of sufficient volume for it to properly register a result. Pedeferri reinstructed him, to no avail. Sugarman did not follow the instructions and, after 10 unsuccessful attempts, the device did not record a valid BAC reading. Pedeferri testified, "I gave him ample time, ample opportunity to complete the test . . . ."

Pedeferri decided that a blood test was necessary. He took Sugarman to a hospital. Sugarman said he did not want to take a blood test but did not physically resist it. He extended his arm with his palm up so it could be tested. Pedeferri placed one hand on Sugarman's arm and with the other rolled up Sugarman's sleeve. Pedeferri testified, "I didn't even have to apply any pressure. He didn't move or flinch . . . ." A nurse took the blood sample.

Joshua Mateo, a forensic chemist, testified that the test results showed a BAC of .25 percent. He stated that the sealed envelope containing Sugarman's blood sample had notations regarding the chain of custody. But there was no name in the box marked "the sample was witnessed by." Mateo testified that they prefer that information to be supplied, but its omission was not a serious deficiency. Filling in the witness name box is not a requirement.

---

[1] All statutory references are to the Vehicle Code unless otherwise stated.

The court denied Sugarman's motion to suppress the results of the blood test. He pled guilty and filed this appeal.

## DISCUSSION

### I. *The Compulsory Blood Test*

■ Sugarman contends that the compulsory blood test without a warrant violated his rights under the Fourth Amendment of the United States Constitution. We disagree.

When motorists who are arrested for driving while intoxicated refuse to take chemical tests of their blood alcohol content, the police may compel them to take a blood test. (*Schmerber v. California* (1966) 384 U.S. 757, 770-772 [86 S.Ct. 1826, 1835-1837, 16 L.Ed.2d 908].) In *Schmerber*, the Supreme Court noted that "the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system." (*Id.* at p. 770 [86 S.Ct. at p. 1836].) Because of this, there is insufficient time to seek a warrant before the evidence of a crime dissipates. (*Id.* at pp. 770-771 [86 S.Ct. at pp. 1835-1836].)

■ California drivers impliedly consent to the chemical testing of their blood if they are arrested for violating section 23152. (*Mercer v. Department of Motor Vehicles* (1991) 53 Cal.3d 753, 759 [280 Cal.Rptr. 745, 809 P.2d 404].) Under the implied consent law, the defendant may select a breath test instead of a blood test. (§§ 13353, 23612.) But "regardless whether the terms of the implied consent statute are met, forcible, warrantless chemical testing may occur under the authority of *Schmerber* if [three conditions are met:] the circumstances require prompt testing, the arresting officer has reasonable cause to believe the arrestee is intoxicated, and the test is conducted in a medically approved manner incident to a lawful arrest." (*Mercer*, at p. 760, italics omitted.)

■ These three conditions were present here. There was a need for prompt testing because the percentage of alcohol in Sugarman's blood was diminishing after the arrest. (*Schmerber v. California, supra*, 384 U.S. at pp. 770-771 [86 S.Ct. at pp. 1835-1836].) Pedeferri had reasonable cause to believe Sugarman was intoxicated because he smelled alcohol when he stopped the car and Sugarman failed five field sobriety tests. A nurse at a hospital took his blood sample showing that the test was performed in a medically approved manner. (*Ibid.*)

Sugarman contends that Pedeferri acted arbitrarily by compelling him to take a blood test. After the police administer a breath test they may not

compel a defendant to take a blood test unless they have a "sufficient need" for it. (*People v. Fiscalini* (1991) 228 Cal.App.3d 1639, 1644 [279 Cal.Rptr. 682].) In *Fiscalini*, the defendant selected a urine test and the police officer obtained a useable sample. The officer decided to also take a blood test because it was "the best test for alcohol." (*Ibid.*) But the Court of Appeal held the blood test sample had to be suppressed. The officer did not show a need for the blood test after the police had already taken a urine sample. (*Ibid.*)

Sugarman contends there was no need for a blood test because he cooperated by providing breath samples. The record does not support this. Pedeferri testified he terminated the breath test after Sugarman failed to follow his instructions by not sealing his lips around the tube. Sugarman was blowing air out of the side of his mouth and not into the machine. Pedeferri reinstructed him, and after 10 unsuccessful attempts the breath testing device did not record a valid BAC reading. There was no evidence that either the machine was malfunctioning or Sugarman had a medical condition that prevented him from completing the simple act of blowing into it. (Cf. *State v. Suazo* (1993) 117 N.M. 794, 796 [877 P.2d 1097, 1099].)

The court could reasonably infer that Sugarman was attempting to obstruct the breath test and Pedeferri did not act arbitrarily. Here, as in *Schmerber*, there was no time to obtain a warrant. Compelling him to take a blood test was a constitutionally reasonable alternative to obtain a reliable test before the blood-alcohol evidence diminished. (*Schmerber v. California, supra*, 384 U.S. at pp. 770-772 [86 S.Ct. at pp. 1835-1837].)

Sugarman contends Pedeferri prematurely stopped the breath test and would have obtained a valid result had he continued that test. But Pedeferri testified that he provided ample time for the completion of the test. Sugarman presented no evidence to contradict this. The trial court could reasonably rely on Pedeferri's assessment that continuing the breath test would not produce a valid result. (*Smith v. Department of Motor Vehicles* (1986) 179 Cal.App.3d 368, 375 [224 Cal.Rptr. 543].) Sugarman contends that because he selected a breath test, he was entitled to a result from it. But Sugarman had a duty to cooperate with Pedeferri so he could obtain a valid test result. (*Gobin v. Alexis* (1984) 153 Cal.App.3d 641, 649-650 [200 Cal.Rptr. 397].) The court could reasonably infer that because Sugarman's actions prevented that, he may not claim the incomplete test was error as he was responsible for that result. (*Ibid.*)

Relying on *Nelson v. City of Irvine* (9th Cir. 1998) 143 F.3d 1196, 1207, Sugarman contends that after selecting a breath test the police may not

require him to take a blood test. ▇ Decisions of the lower federal courts may be persuasive, but we are not bound by them. (*People v. Williams* (1997) 16 Cal.4th 153, 190 [66 Cal.Rptr.2d 123, 940 P.2d 710].) ▇ But even so, *Nelson* is distinguishable. There the police either prevented or coerced the defendants from selecting breath or urine tests. They acted in bad faith by interfering with the defendants' choice of tests and compelling them to take blood tests. By contrast, Pedeferri honored Sugarman's request for a breath test until Sugarman's actions prevented its completion. There was no evidence that Pedeferri acted in bad faith. In *Nelson*, the plurality opinion stated: "When an arrestee has agreed to submit to a breath or urine test which is available and of similar evidentiary value, the government's need for a blood test disappears." (*Nelson*, at p. 1207.)

But here the breath test had no evidentiary value because, through no fault of Pedeferri, it could not register a valid test result. Pedeferri, therefore, had a "sufficient need" for the blood test. (*People v. Fiscalini, supra,* 228 Cal.App.3d at p. 1644.)

Sugarman has not shown that requiring him to take a blood test violated his Fourth Amendment rights.

## II. *Reasonableness of the Test*

▇ Sugarman contends the way Pedeferri conducted the blood test was unreasonable and therefore unconstitutional.

▇ A blood test which is performed in an unreasonable manner violates the Fourth Amendment. (*Schmerber v. California, supra,* 384 U.S. at pp. 771-772 [86 S.Ct. at pp. 1836-1837].) Police may use force to obtain a blood sample from a resistant defendant, but excessive force is unconstitutional. (*Mercer v. Department of Motor Vehicles, supra,* 53 Cal.3d at p. 760; *Hammer v. Gross* (9th Cir. 1991) 932 F.2d 842, 845.) Those who draw blood need not be doctors, but they may not expose the defendant to an unreasonable risk of infection or pain. (*People v. Ford* (1992) 4 Cal.App.4th 32, 37-38 [5 Cal.Rptr.2d 189].)

▇ Sugarman contends Pedeferri personally drew the blood sample from him by force and he resisted. But the record does not support his contentions. Pedeferri neither took his blood nor did he use force or pressure. A nurse in the hospital drew the blood. Although Sugarman said he did not want a blood test, he cooperated and did not resist. He extended his arm with his palm up so it could be tested. The nurse cleaned his arm with a swab before extracting the blood. There is no evidence that the method of extraction violated medical standards or involved pain or a risk of infection.

Sugarman contends that there was no witness signature on the blood-test envelope. But Mateo testified this was not a requirement and its omission was not a serious deficiency. Moreover, Sugarman did not present evidence to show that the test result was inaccurate or that there was a break in the chain of custody. He has not shown that the procedure was either unauthorized or unreasonable. (*People v. Ford, supra,* 4 Cal.App.4th at p. 38.)

The judgment is affirmed.

Yegan, J., and Perren, J., concurred.