Filed 7/31/13; pub. order 8/15/13 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>         Plaintiff and Respondent,<br><br>v.<br><br>ANTHONY CUEVAS,<br><br>         Defendant and Appellant.<br><br>[And six other cases.*] | A138062<br><br>(Alameda County<br>Super. Ct. No. 137095) |

## I. INTRODUCTION

The Appellate Division of the Superior Court of Alameda County, on its own motion, certified these seven cases for transfer to this court. In each case, defendant was charged with the misdemeanor offenses of driving under the influence of alcohol or drugs (Veh. Code, § 23152, subd. (a)) and driving while having a 0.08 percent or higher blood alcohol level (Veh. Code, § 23152, subd. (b)). Each defendant filed a motion to suppress evidence pursuant to Penal Code section 1538.5, contending the blood drawn from his or her person subsequent to arrest, and pursuant to California's implied consent law (see Veh. Code, § 23612), should be suppressed under *Schmerber v. California* (1966)

---

* *People v. Patel*, A138109 (Super. Court No. 137134); *People v. Sakuma*, A138110 (Super. Court No. 137839); *People v. Lam*, A138111 (Super. Court No. 244695); *People v. Allen*, A138112 (Super. Court No. 426956); *People v. Chinchilla*, A138113 (Super. Court No. 573377); and *People v. Wai*, A138114 (Super. Court No. 572786).

384 U.S. 757 (*Schmerber*) because the blood draw was not performed in a constitutionally reasonable manner. In six of the seven cases, the trial court denied defendant's motion to suppress; the trial court in the remaining case granted the motion.

Following appeal to the appellate division, the court in all seven cases, splitting two-to-one, sided with defendants on the suppression motions. The majority concluded the evidence presented by the prosecution at the suppression hearing, consisting solely of testimony from a police officer who described the nature and circumstances of the blood draw in question, was insufficient to show the blood draw was performed in a reasonable manner under the Fourth Amendment. The dissent, on the other hand, concluded the prosecution met its burden of showing the searches were reasonable.

We ordered the cases transferred to this court (Cal. Rules of Court, rule 8.1008(a)(1)), consolidated them for purposes of briefing and disposition, and asked the parties to brief the following issue: "Does the record support a finding defendant's blood was drawn in a manner that was unreasonable within the meaning of the Fourth Amendment?" Having carefully reviewed the record in each case and the briefs submitted, we agree with the dissent in the appellate division and find the blood draw in each case passes muster under the Fourth Amendment.

## II. FACTS AND PROCEDURAL BACKGROUND

Because the sole issue on appeal is whether blood was drawn in an unreasonable manner within the meaning of the Fourth Amendment, we briefly summarize the facts common to all seven cases relating to the underlying circumstances and manner of the blood draw. Each defendant was arrested for driving under the influence,[1] after which each was advised by the arresting officer that under California's implied consent law he/she was required to take one of two chemical tests. All defendants opted for a blood test and were transported to either a jail facility or, in one case to a hospital, to have their blood drawn. In all cases, the arresting or transporting officer witnessed blood draws

---

[1] Since the circumstances of the detentions and arrests are not challenged on appeal, we need not discuss them further.

2

performed by individuals whom the officers identified as either phlebotomists, blood technicians or individuals who routinely draw blood. In general, the officers observed that the individual drawing blood cleaned the area before drawing blood and used a needle from a sealed package. In five of the seven cases, the officers noted defendants did not appear to be in any pain or discomfort, and in any event, there was no evidence or testimony indicating any of the defendants claimed to be in pain or discomfort during the blood draw procedure. Finally, in five of the cases, the officers observed the injection area being bandaged following the blood draw.

As noted above, the procedural posture in each case is the same. Pursuant to Penal Code section 1538.5, each defendant filed a motion to suppress evidence of the blood draw, and, on appeal from the trial court's ruling, the majority of the appellate division concluded the prosecution failed to show the blood draw was performed in a reasonable manner under the Fourth Amendment. Specifically, the majority determined the evidence in these cases failed to demonstrate the blood draws met the constitutional standard of reasonableness because the police officers lacked the medical training necessary to testify whether each blood draw was performed in a medically approved manner and because (in all but one case) the blood draws were performed in a jail facility rather than in a hospital setting.[2] The dissent, however, took issue with the majority's conclusion that the evidence of the manner of the blood draw must come from the individual who performed it or from some other expert witness. Instead, the dissent concluded "[t]he direct and uncontroverted evidence" from the police officer who observed the blood draw was sufficient to establish a blood draw was performed in a reasonable manner. For the reasons more fully explained below, we agree with the dissent.

---

[2] In *People v. Lam*, A138111 (Super. Court No. 244695)*,* the blood was drawn at Washington Hospital, but the majority concluded the police officer lacked the necessary medical training to testify about the efficacy of the blood draw, and "although performed at a medical facility, was by an unidentified individual who was not clearly a trained medical professional."

3

### III. DISCUSSION

The purpose of an order to transfer is so that we may review "the *propriety* of a ruling of an appellate division." (*People v. Meyer* (2010) 186 Cal.App.4th 1279, 1282.) To this end, we asked the parties to brief the following issue: "Does the record support a finding defendant's blood was drawn in a manner that was unreasonable within the meaning of the Fourth Amendment?" In addressing this issue, we exercise our independent judgment in determining whether the searches at issue meet the " ' "constitutional standard of reasonableness." ' " (*People v. Loewen* (1983) 35 Cal.3d 117, 123.)

The high court has "long held that the 'touchstone of the Fourth Amendment is reasonableness.' [Citation.] Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances." (*Ohio v. Robinette* (1996) 519 U.S. 33, 39.) Moreover, in applying the "reasonableness" test, the court has "consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry" and "expressly disavow[ing] any 'litmuspaper test' or single 'sentence or . . . paragraph . . . rule,' in recognition of the 'endless variations in the facts and circumstances' implicating the Fourth Amendment." (*Ibid.*) The court's " 'traditional contextual approach' " does not countenance " 'bright-line rule[s] applicable to all investigatory pursuits.' " (*Ibid.*)

In *Schmerber, supra,* 384 U.S. 757, a DUI case, the court applied the same constitutional standard of reasonableness. There, after concluding a blood draw did not violate the Fifth Amendment privilege against self-incrimination, the court stated, "once the privilege against self-incrimination has been found not to bar compelled intrusions into the body for blood to be analyzed for alcohol contest, the Fourth Amendment's proper function is to constrain, not against all intrusions as such, but *against intrusions which are not justified in the circumstances, or which are made in an improper manner*. In other words, the questions we must decide in this case are whether the police were justified in requiring petitioner to submit to the blood test, and *whether the means and*

4

*procedures employed in taking his blood respected relevant Fourth Amendment standards of reasonableness.*" (*Schmerber*, at pp. 767–768, italics added.)

The court evaluated the latter consideration—whether the blood draw was performed in a reasonable manner under the Fourth Amendment—concluding "the test chosen to measure petitioner's blood-alcohol level was a reasonable one." (*Schmerber, supra,* 384 U.S. at p. 771.) The court stated: "Extraction of blood samples for testing is a highly effective means of determining the degree to which a person is under the influence of alcohol. [Citation.] Such tests are a commonplace in these days of periodic physical examinations and experience with them teaches that the quantity of blood extracted is minimal, and that for most people the procedure involves virtually no risk, trauma, or pain." (*Ibid.*, fn. omitted.) The court also concluded the blood draw "was performed in a reasonable manner. Petitioner's blood was taken *by a physician in a hospital environment according to accepted medical practices.* We are thus not presented with the serious questions which would arise if a search involving use of a medical technique, even of the most rudimentary sort, were made by *other than medical personnel or in other than a medical environment*—for example, if it were administered by police in the privacy of the stationhouse. To tolerate searches under these conditions might be to invite an unjustified element of *personal risk of infection and pain.*" (*Id.* at pp. 771–772, italics added.)

Since *Schmerber,* California appellate courts have evaluated whether deviations from the scenario presented in *Schmerber*—i.e., a blood draw by a physician in a hospital—created an undue risk of harm to the arrestee and thus rendered the blood extraction unconstitutional. In these decisions, the courts concluded that a blood test was not unconstitutional even though the person drawing the blood may not have been authorized to perform the extraction under applicable statutory provisions, and even though the blood was drawn at a jail rather than at a medical facility. (See *People v. Ford* (1992) 4 Cal.App.4th 32, 34–37 [blood draw conducted at police station]; see also *People v. Esayian* (2003) 112 Cal.App.4th 1031, 1035, 1037–1041 [drawing of arrestee's blood by phlebotomist who was not fully qualified to draw blood under state law for purposes

5

of determining its alcoholic content did not violate Fourth Amendment]; *People v. McHugh* (2004) 119 Cal.App.4th 202, 213–214 [same]; *People v. Mateljan* (2005) 129 Cal.App.4th 367, 376 [same].)

Furthermore, these decisions of the California appellate courts emphasize the key inquiry is whether "the manner in which the sample was obtained deviated so far from the medical practices found to be reasonable in *Schmerber* as to render the seizure constitutionally impermissible." (*People v. Ford, supra,* 4 Cal.App.4th at p. 37; see also *People v. Esayian, supra,* 112 Cal.App.4th at p. 1040 [noting that whereas the high court in *Schmerber* "express[ed] some doubts about blood being drawn in the private setting of the police station, it did not attempt to set any specific rules for blood tests conducted outside the hospital setting"].) Under this standard, the court considers the overall reasonableness of the blood draw to determine whether "the test conditions subjected [the arrestee] to 'an unjustified element of personal risk of infection or pain.' " (*People v. Ford,* at p. 38; see also *People v. Mateljan, supra,* 129 Cal.App.4th at p. 376 [court evaluates whether "draws were performed in a manner which . . . create[d] undue harm or risk"]; *People v. Sugarman* (2002) 96 Cal.App.4th 210, 216 (*Sugarman*) [court inquires whether defendant was exposed "to an unreasonable risk of infection or pain"]; *People v. Esayian,* at p. 1041 [stating "nothing in this record . . . justif[ied] an inference that the manner of drawing the blood was unsanitary, or subjected the suspect to any unusual pain or indignity"].)

Of these cases, *Sugarman* is the most analogous. In *Sugarman*, defendant pleaded guilty to driving under the influence and subsequently appealed the trial court's denial of his motion to suppress the results of his blood test. (*Sugarman, supra,* 96 Cal.App.4th at pp. 212–214.) The appellate court summarized the pertinent facts as follows: "[California Highway Patrol Officer] Pedeferri decided that a blood test was necessary. He took Sugarman to a hospital. Sugarman said he did not want to take a blood test but did not physically resist it. He extended his arm with his palm up so it could be tested. Pedeferri placed one hand on Sugarman's arm and with the other rolled up Sugarman's sleeve. Pedeferri testified, 'I didn't even have to apply any pressure. He didn't move or

6

flinch . . . .' A nurse took the blood sample." (*Sugarman, supra,* 96 Cal.App.4th at p. 213.)

The appellate court stated that under *Schmerber,* " 'forcible, warrantless chemical testing may occur' " if, among other things, " 'the test is conducted in a medically approved manner.' " (*Sugarman, supra,* 96 Cal.App.4th at p. 214.) In that regard, the court stated: "A nurse at a hospital took his blood sample showing that the test was performed in a medically approved manner." (*Ibid.*) In short, the *Sugarman* court deemed the testimony of the police officer, relating his observations of the blood draw in question, was sufficient evidence the blood test was conducted in a reasonable manner.

We concur with the reasoning, implicit in *Sugarman,* that the testimony of a police officer, when he or she is a percipient witness to the blood draw in question, may properly be considered in evaluating whether that blood draw was conducted in a constitutionally reasonable manner. To conclude otherwise, as the majority of the appellate division did in the cases before us, would violate the " 'traditional contextual approach' " to Fourth Amendment issues mandated by the high court and create a bright-line rule—that expert testimony is required to show a blood test was conducted in a constitutionally reasonable manner—of the sort "expressly disavowed" by the high court. (*Ohio v. Robinette, supra,* 519 U.S. at p. 39.)

Turning now to the testimony of the officers in question, we address whether the un-rebutted evidence presented by the officers is sufficient to show the blood draws were performed in a reasonable manner under the Fourth Amendment. First, we note that in all cases the officer asked the defendant whether he or she wished to take a blood test or a breath test, pursuant to California's implied consent law, and all the defendants chose to have a blood test. Whereas we agree with defendants that such consent under California's implied consent law is not by itself sufficient to demonstrate the reasonableness of the search, it is nevertheless one factor weighing in favor of the

7

reasonableness of the search.[3]  Moreover, in each case the officer testified the blood draw was performed by a person the officer believed to be a trained phlebotomist or blood technician.  These beliefs were supported either by the officer's prior contacts with that person in the context of prior arrestee blood draws, by the procedure employed by the officer to cause that person to respond to the jail to perform the blood draw, or, in the case of *People v. Lam*, by the officer's account that the person responded to his request for a phlebotomist at the hospital.

Additionally, the officers' testimony confirmed that none of the defendants exhibited any signs of pain or discomfort during the blood draw procedure; indeed, the testimony reflects these were routine blood draws consistent either with the officer's own experience of having blood drawn or with the officer's observation of other arrestee blood draws.  Moreover, the testimony reflects the blood draws were conducted in a cooperative manner, utilizing needles from sealed packages and ensuring the blood extraction area was cleaned prior to inserting the needle and cleaned and bandaged after the blood was drawn.  In sum, under the totality of the circumstances presented, in each case we conclude the officer's un-rebutted testimony shows the blood draw did not expose the defendant to " 'an unjustified element of personal risk of infection or pain' " (*People v. Ford, supra,* 4 Cal.App.4th at p. 38; *Sugarman, supra,* 96 Cal.App.4th at p. 216), and was not performed in a manner which created any "undue harm or risk " to defendant (*People v. Mateljan, supra,* 129 Cal.App.4th at p. 376).  In sum, we are

---

[3]  The People contend that where a defendant opts for a blood test under California's implied consent law, the resulting blood draw is within the scope of that consent, and is therefore reasonable under the Fourth Amendment.  Not so.  A search conducted pursuant to a warrant is not per se reasonable.  (*People v. Cook* (1978) 22 Cal.3d 67, 97, 98 ["[A] search conducted under color of a warrant is not 'reasonable per se,' but may be unreasonable in the constitutional sense on a number of grounds," for example, "even if the warrant is both legally sufficient and properly served, the search is unreasonable when it is excessive in intensity or duration"].)  Likewise, even if a defendant consents to a blood test under California's implied consent law, such consent does not obviate the requirement that the blood test be conducted in a constitutionally reasonable manner.  (See *Schmerber, supra,* 384 U.S. at pp. 767–768.)

8

persuaded the blood draws in these cases were conducted in a constitutionally reasonable manner.

## IV. DISPOSITION

The opinions of the Appellate Division of the Superior Court of Alameda County in these cases are reversed, and the cases are hereby remanded to the trial court for further proceedings.

_____
Margulies, Acting P.J.

We concur:

_____
Dondero, J.

_____
Banke, J.

Filed 8/15/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>ANTHONY CUEVAS,<br><br>     Defendant and Appellant.<br><br>[And six other cases.<sup>\*</sup>] | A138062<br><br>(Alameda County<br>Super. Ct. No. 137095)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion in the above-entitled matter filed on July 31, 2013, was not certified for publication in the Official Reports. After the court's review of a request under California Rules of Court, rule 8.1120, and good cause established under rule 8.1105, it is hereby ordered that the opinion should be published in the Official Reports.

Dated:

                                                 _____

                                                 Margulies, Acting P.J.

---

<sup>\*</sup> *People v. Patel*, A138109 (Super. Court No. 137134); *People v. Sakuma*, A138110 (Super. Court No. 137839); *People v. Lam*, A138111 (Super. Court No. 244695); *People v. Allen*, A138112 (Super. Court No. 426956); *People v. Chinchilla*, A138113 (Super. Court No. 573377); and *People v. Wai*, A138114 (Super. Court No. 572786).

Trial Court:   Alameda County Superior Court

Trial Judges:

Hon. Jacob Blea, III  (*People v. Cuevas*, A138062; Super. Court No. 137095; *People v. Sakuma*, A138110; Super. Court No. 137839)

Hon. Richard O. Keller  (*People v. Lam*, A138111; Super. Court No. 244695)

Hon. Christine K. Moruza  (*People v. Patel*, A138109; Super. Court No. 137134)

Hon. Kevin R. Murphy  (*People v. Allen*, A138112; Super. Court No. 426956)

Hon. Yolanda Neill Northridge  (*People v. Wai*, A138114*;* Super. Court No. 572786)

Hon. Philip Sarkisian  (*People v. Chinchilla*, A138113; Super. Court No. 573377)

Counsel:

Nancy E. O'Malley, District Attorney, Donna McIntosh, Deputy District Attorney and Michael O'Connor, Assistant District Attorney for Plaintiff and Respondent.

Eloy I. Trujillo for Defendants and Appellants Anthony Cuevas, Kenneth Allen and Henry Lam.

Marsanne Weese for Defendants and Appellants Felix Chinchilla and Stephen Sakuma.

Ivan O.B. Morse for Defendant and Appellant Chirag Patel.

Donald G. Drewry for Defendant and Appellant Thu Wai

2