Filed 4/11/14

<u>CERTIFIED FOR PARTIAL PUBLICATION\*</u>

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
# COUNTY OF RIVERSIDE APPELLATE DIVISION

| | |
|---|---|
| **THE PEOPLE,**<br><br>       Plaintiff and Respondent,<br><br>       v.<br><br>**ANTHONY A. HARRIS,**<br><br>       Defendant and Appellant. | APP1300100<br><br>(Trial Ct. No. RIM1216935) |

APPEAL from an order of the Superior Court of Riverside County, Becky Dugan, Judge. Affirmed.

Michael J. Kennedy for Defendant and Appellant.

Paul E. Zellerbach, District Attorney, and Matt Reilly, Deputy District Attorney, for Plaintiff and Respondent.

**THE COURT\***

Defendant appeals from the denial of his motion to suppress, contending that the blood draw with which he cooperated after being arrested for driving under the influence (DUI) of drugs was nevertheless constitutionally invalid because police failed to obtain a warrant and

---

Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion ts certified for publication with the exception of part II of the Discussion.

\* Sharon J. Waters, Presiding Judge, Jeffrey J. Prevost and Raquel A. Marquez, Judges.

because there was no applicable exception to the warrant requirement. He also argues that there was insufficient evidence that the blood draw was performed in a constitutionally reasonable manner. In the published portion of this opinion, we find that the blood draw was justified under the Fourth Amendment by defendant's consent pursuant to California's implied consent law consent he never purported to withdraw by refusing to comply with the blood draw. In the unpublished portion of this opinion, we find that there was sufficient evidence to establish that the blood draw was performed in a reasonable manner. Accordingly, we affirm the trial court's denial of defendant's motion to suppress.

**FACTS**

On the afternoon of October 16, 2012, motorcycle officer Eric Robinson of the Riverside County Sheriff's Department was on duty traveling on I-215 near the 60 freeway interchange, when he saw a car unsafely cut across four lanes through traffic without signaling and accelerate up to about 90 miles per hour. Officer Robinson followed the car at that speed for a half mile or so, and saw it drift to the left over a double yellow line into the center median strip and back, and then drift to the right onto the division line with the adjoining lane and back. Officer Robinson made several attempts over his loudspeaker to pull the vehicle over, and the driver eventually complied. He noticed that the driver, defendant, was sweating and had a rigid, flushed face, bloodshot eyes, dilated pupils, and fast, jerky movements. The officer testified that he is a drug recognition expert, and that these symptoms are typical of being under the influence of a stimulant. Defendant performed five field sobriety tests, after which Officer Robinson concluded that defendant was "under the influence of a substance," arrested him, and advised him pursuant to the implied consent law that he was required to take a blood test. After the advisement defendant responded, "okay."

2

Defendant was transported to the Moreno Valley station where Officer Robinson, who had received some training regarding the proper procedures for DUI blood draws, saw blood nurse Coughlin, a phlebotomist, draw a sample of defendant's blood. She swabbed the inside of defendant's right elbow with an apparent disinfectant, and used a dry, normal hypodermic syringe to take a sample of defendant's blood. Defendant never resisted or indicated any sort of refusal to cooperate with the blood draw.

Defendant was charged with DUI and with being under the influence of a controlled substance. (Veh. Code, § 23152, subd. (a); Health & Saf. Code, § 11550, subd. (a).) [1] Prior to trial he brought a motion to suppress, at which Officer Robinson testified to the above facts and at which defendant testified on his own behalf. (Pen. Code, § 1538.5.) He said that his blood was drawn in a holding cell while he was handcuffed behind his back and to a bar on the seat. He also claimed that the officer was not, in fact, present during the draw. He admitted to having used meth that day, and ecstasy at least two days prior, but he said that the drugs did not affect him "[o]ther than making me alert on my drive home," and specifically that they did not impair his perception or memory of the events surrounding his arrest. Defendant argued that Officer Robinson had no constitutional justification for failing to obtain a warrant for the blood draw, and that there was no evidence that accepted medical practices were followed, but the trial court found that the blood draw was authorized under the implied consent law and denied the motion to suppress. Defendant brings a pretrial appeal from that order. (Pen. Code, § 1538.5, subd. (G).)

**DISCUSSION**

Defendant's first argument is that the blood draw violated the Fourth Amendment because there were no special facts, i.e., exigent circumstances, to justify the warrantless search

[1] All further statutory references are to the Vehicle Code unless otherwise indicated.

3

as required by *Schmerber* v. *California* (1966) 384 U.S. 757, 770-71 *(Schmerber),* and *Missouri* v. *McNeely* (2013) 569 U.S._ [133 S.Ct. 1552] *(McNeely).* He also argues that there was no evidence that the search was performed according to accepted medical practices, as required in order to be constitutionally reasonable. The People briefly respond that they were required to show neither exigent circumstances nor constitutionally reasonable performance because the blood was taken with defendant's consent pursuant to the implied consent law. Though it is not nearly as simple a question as the People suggest, we find that cooperation with the implied consent law does indeed constitute Fourth Amendment consent. On the other hand, we agree with defendant that even consensual blood draws must be performed in accordance with accepted medical practices. We ultimately find that in this case the evidence below established the constitutionality of the blood draw in both aspects.

*1. No Special Facts Establishing Exigent Circumstances Were Required Because the Blood Draw Was Independently Justifiable as a Consent Search Pursuant to the Implied Consent Law*

A bit of legal background is necessary here: In 1966, in *Schmerber,* the United States Supreme Court upheld a warrantless, forced blood draw done in the course of a DUI investigation where the officer was confronted with an emergency making it unfeasible to obtain a warrant before the defendant's blood alcohol dissipated, and where the blood draw was performed according to accepted medical practices. *(Schmerber, supra,* 384 U.S. at pp. 770-72.) Subsequent California cases uniformly interpreted *Schmerber* to mean that no exigency beyond the natural evanescence of intoxicants in the blood stream, present in every DUI case, was needed to establish an exception to the warrant requirement. (See *Mercer* v. *Department of Motor Vehicles* (1991) 53 Cal.3d 753, 757-60, 762-63, 769 *(Mercer); People v. Superior Court*

4

*(Hawkins)* (1972) 6 Cal.3d 757, 761 *(Hawkins); People v. Sugarman* (2002) 96 Cal.App.4th 210, 214 *(Sugarman); People v. Ford(l992)* 4 Cal.App.4th 32,35 *(Ford); People v. Fiscalini* (1991) 228 Cal.App.3d 1639, 1642 *(Fiscalini); Scott v. Meese* (1985) 174 Cal.App.3d 249, 251-52; *People v. Ritchie* (1982) 130 Cal.App.3d 455,458-59 [specifically with regard to drugs]; *People v. Ryan* (1981) 116 Cal.App.3d 168, 182; *People v. Puccinelli* (1976) 63 Cal.App.3d 742, 746 *(Puccinelli).)* Last year, however, the high court held in *McNeely* that,

> while the natural dissipation of alcohol in the blood may support a finding of exigency in a specific case, as it did in *Schmerber,* it does not do so categorically. Whether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances.

*(McNeely, supra,* 133 S.Ct. at p. 1563.) *McNeely* thus repudiated the long-standing California interpretation of *Schmerber.*

The blood draw in this case was not supported by exigent circumstances as outlined in *McNeely,* and the People do not so claim [2] Rather, they argue that the blood draw was taken with defendant's consent, citing the principle "that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *(Schneckloth v. Bustamante* (1972) 412 U.S. 218, 219.)

No California court has expressly considered the question of whether chemical tests taken pursuant to the implied consent law are justifiable under the Fourth Amendment as consent searches; before *McNeely,* none has had to. While in decades past it was declared that "[t]he California 'implied consent' statute [citation][footnote] has repeatedly withstood assault on

---

[2] Even though the arrest and blood draw took place before *McNeely* was decided, defendant is entitled to the benefit of that decision because his case is on direct appeal and not yet final. *(Griffith v. Kentucky* (1987) 479 U.S. 314; *People v. Song* (2004) 124 Cal.App.4th 973, 982.) Furthermore, the People have not argued that the good faith exception to the exclusionary rule set forth in *Davis v. United States* (2011) 564 U.S._ [131 S.Ct. 2419], applies here, and so we have no occasion to reach that question.

5

constitutional grounds" *(Anderson* v, *Cozens* (1976) 60 CaLApp.3d 130, 139), and in particular that the statute does not violate one's right "to be free from illegal searches and seizures" *(id* at pp, 140-41; *Westmoreland* v. *Chapman* (1968) 268 CaLApp.2d I, 4; *Bush* v. *Bright* (1968) 264 CaLApp.2d 788, 790), these cases simply cite *Schmerber* as authority, and it is easy to see why they did. The Legislature first enacted California's original implied consent law shortly after the decision in *Schmerber,* with the goal of limiting the number of ""unpleasant, undignified and undesirable"" forced blood draws. *(Ritschel* v. *City of Fountain Valley* (2006) 137 Cai.AppAth 107, 117-18 *(Ritschel)* [quoting *Hernandez* v. *Department of Motor Vehicles* (1981) 30 Ca1.3d 70, 77].) And so even though the implied consent law has never been considered a simple codification of *Schmerber,* and compliance with the more strict provisions of the implied consent law has never been a necessary prerequisite for constitutionality *(id.* at pp. 118-20), the two strands ran in parallel under the longstanding California interpretation of *Schmerber* (see *Mercer, supra,* 53 Cal.3d at p. 760 [noting that the implied consent law "is an adjunct to" *Schmerber*]), such that any chemical test taken cooperatively pursuant to the implied consent law would have also been constitutionally permissible as a forced test had the person refused to cooperate (see *Sugarman, supra,* 96 CaLAppAth at p. 214 [observing that by statute drivers impliedly consent to chemical testing if they are arrested for DUI, and also that under *Schmerber* drivers arrested for DUI may be forced to undergo a blood test]). Implied consent tests were simply a subset of all *Schmerber* tests, in other words. But *McNeely* forces a reexamination of the constitutional basis for the implied consent regime by narrowing the circumstances under which a forced chemical test is justified, such that a warrantless test in in the absence of case-specific exigent circumstances can comply with the statute if done cooperatively, but now violates the Fourth Amendment if done forcibly. For the reasons discussed below, we hold that chemical tests

performed in compliance with the implied consent law satisfy the Fourth Amendment as consent searches, independently of *Schmerber-McNeely.*

To divorce the constitutionality of the California implied consent law from the *Schmerber* rule is consistent with the pronouncements of the United States Supreme Court and federal law. Since at least the early 1980's, the high court has recognized that the sort of forced blood draw authorized under *Schmerber* is categorically different from a blood draw that an arrestee consented to under the persuasion of an implied consent law. (See *McNeely, supra,* 133 S.Ct. at p. 1566 (plur. opn. of Sotomayor, J.); *South Dakota v. Neville* (1983) 459 U.S. 553, 559-60 *(Neville).)* Similarly, the Ninth Circuit has recognized that chemical tests done in accordance with the implied consent law for federal lands are legally distinct from forcible tests under *Schmerber* – the two categories result from the two alternative avenues available to law enforcement for obtaining the evidence. *(United States v. Chapel* (9th Cir. 1995) 55 FJd 1416, 1419-20.) Furthermore, an evolving understanding of the constitutional basis for California's implied consent statute is right at home in the history and development of the law regarding chemical tests in DUI cases. The California Supreme Court first approved warrantless, forced blood draws in DUI cases on the ground that they were searches incident to arrest. *(People v. Duroncelay* (1957) 48 Cal.2d 766, 771-72.) The following decade, the United States Supreme Court followed suit and in *Schmerber* found that the warrantless, forced blood draw in that case complied with the Fourth Amendment as "an appropriate incident to petitioner's arrest." *(Schmerber, supra,* 384 U.S. at pp. 770-71; accord *Hawkins, supra,* 6 Cal.3d at p. 761.) But despite the *Schmerber* court's own characterization of its holding, its conclusion "did not turn on the existence of a valid prior arrest. To the contrary, the court relied almost exclusively on the exigency created by the evanescent nature of blood alcohol and the danger that important

evidence would disappear without an immediate search." *(People v. Trotman* (1989) 214 Cal.App.3d 430, 436.) Today, the *Schmerber* rule is fully understood to be an application of the exigent circumstances exception to the warrant requirement. *(McNeely, supra,* 133 S.Ct. at pp. 1558-60.) Likewise, in light of the entire body of law as it has developed over the decades, it is no great innovation to say that implied consent is legally effective consent, at least so long as the arrestee has not purported to withdraw that consent. Indeed, other California courts have impliedly held this understanding. In *Fiscalini, supra,* 228 Cal.App.3d at pp. 1641, 1645, Division One of the Fourth District Court of Appeal construed the defendant's choice of a urine test under the version of the implied consent law then in effect as resulting in a urine sample "obtained ... with his consent." More recently, in *People v. Cuevas* (2013) 218 Cal.App.4th 1278, 1286 & fu. 3 *(Cuevas),* Division One of the First District Court of Appeal spoke of defendants who chose blood tests has having given "consent under California's implied consent law." This view also comports with the Legislature's apparent view as to the nature of the statute, as expressed in the clause that a person who is dead, unconscious, or otherwise incapable of refusal "is deemed not to have withdrawn his or her consent and a test or tests may be administered ...." (§ 23612, subd. (a)(5).)

We recognize, as defendant points out, that Fourth Amendment consent must be free and voluntary, rather than coerced or given in mere submission to authority. *(People v. Lawler* (1973) 9 Cal.3d 156, 163; *People v. Challoner* (1982) 136 Cal.App.3d 779, 781.) Even so, consent is not invalid under the Fourth Amendment simply because it was given in advance and in exchange for a related benefit, and this is all the implied consent law accomplishes. (See *People v. Robles* (2000) 23 Cal.4th 789, 795 [for Fourth Amendment purposes, a defendant "may validly consent in advance to warrantless searches and seizures in exchange for the opportunity

to avoid serving a state prison term" by being placed on probation]; *People v. Bravo* (1987) 43 Cal.3d 600, 608 [same, with the added recognition that "[p]robation is not a right, but a privilege"].) To drive a motor vehicle on the highways of this state is a privilege subject to regulation, not a right *(Tolces v. Trask* (1999) 76 Cal.App.4th 285, 290), and one such regulation is that any person who does so is statutorily "deemed to have given his or her consent to chemical testing of his or her blood or breath for the purpose of determining the alcoholic content of his or her blood," or "of his or her blood for the purpose of determining the drug content of his or her blood, if lawfully arrested for" DUI (§ 23612, subds. (a)(l)(A), (B)). By choosing to use the highways, drivers voluntarily bring themselves under the regulation of the implied consent law. (See *Troppman* v. *Valverde* (2007) 40 Cal.4th 1121, 1125, 1139; see also *McNeely, supra,* 133 S.Ct. at p. 1566 (plur. opn. of Sotomayor, J.) [speaking favorably of "implied consent laws that require motorists, as a condition of operating a motor vehicle within the State, to consent to [blood alcohol] testing if they are arrested or otherwise detained on suspicion of a drunk-driving offense"]; *State* v. *Brooks* (Minn. 2013) 838 N.W.2d 563, 572 [recognizing that the *McNeely* plurality opinion supports the idea that a state can require consent to appropriate chemical testing as a precondition for driving in the state].) Furthermore, drivers are presumed to know the law. (See *Murphy v. Clayton* (1896) 113 Cal. 153, 161 ["every one is presumed to know the law"]; *People v. Munroe* (1893) 100 Cal. 664, 670 [similar]; *Bank One Texas v. Pollack* (1994) 24 Cal.App.4th 973, 981 [similar].) It follows that motorists freely consent for Fourth Amendment purposes to chemical testing in accordance with the terms of the implied consent law, in exchange for the privilege of using the roads. (See also *McNeely, supra,* 133 S.Ct. at p. 1566 (plur. opn. of Sotomayor, J.) [characterizing a chemical test performed pursuant to an implied consent law as an alternative to a nonconsensual blood draw].)

The fact that there are penalties for a refusal to cooperate with such testing upon arrest does not render the consent illusory or coercive. (See §§ 13353 [setting forth the consequences to one's driving privilege for refusal], 23577 [setting forth the enhanced penal consequences upon being convicted for DUI].) In the first place, the Court of Appeal has expressly upheld the use of a refusal to enhance the punishment for DUI against a Fourth Amendment challenge; it reasoned that there is no coercion if the Legislature has "the authority ... to impose a condition on the right to refuse," and that the Legislature does have that authority here because, even though a fundamental liberty interested is affected, the refusal penalty statute meets strict scrutiny and so satisfies due process. *(Quintana v. Municipal Court* (1987) 192 Cai.App.3d 361, 367-69 [reviewing former section 23159, now numbered as section 23577].) Similarly, with regard to administrative penalties, as discussed above the privilege to drive on the public highways in the first place is conditional on implied consent to chemical testing upon a DUI arrest. To have used the roads, only thereafter to refuse to submit to chemical testing when required, is to abuse the driving privilege, and justifies a suspension of those privileges. In the unique context of giving consent to a search and seizure in exchange for a benefit, the person cannot enjoy the benefit only then to renounce the cost, and expect to continue enjoying the benefit. (See *People v. Mason* (1971) 5 Cal.3d 759, 762-63, disapproved on another ground in *People v. Lent* (1975) 15 Cal.3d 481, 486, fn. 1 [holding that a probationer who agreed to a search term cannot avoid an imminent search by refusing law enforcement permission to conduct it].) The public also has a right to expect the bargain to be honored, and a person who has shown a disinclination to abide by the agreement is not a fit candidate for continued, immediate, limitless use of the highways. In this way we can understand how case law has described the implied consent law as a "method of compelling a person arrested for drunk driving to submit to

a test for intoxication" *(Hawkins, supra,* 6 Cal.3d at p. 765), while describing chemical tests submitted to under the law as "noncoercive" and the product of "volition" as opposed to compulsion *(Puccinelli, supra,* 63 Cal.App.3d at pp. 745-46).

This is not to say that a driver arrested for DUI can be said to have consented to a *forcible* blood draw in contravention of his then-expressed wishes in the event he purports to withdraw his consent. Setting aside the question of constitutionality (see *McNeely, supra,* 133 S.Ct. at p. 1566 (plur. opn. of Sotomayor, J.) [suggesting that a driver's refusal to submit to a chemical test under an implied consent law operates as a withdrawal of consent and renders any subsequent test nonconsensual]), there is nothing in the implied consent law to indicate that such measures are within the scope of the consent, and so in these cases the implied consent law gives way to the constitutional rules of *Schmerber* and its progeny (see *Ritschel, supra,* 137 Cal.App.4th at pp. 118-20). But it does mean that such a person who *cooperates* with a chemical test pursuant to the implied consent law has given real and voluntary consent, excusing police from obtaining a warrant. This is exactly what happened in this case. After the officer informed him that he was required to submit to a blood draw, defendant responded "okay." Later, at the police station, all indications are that defendant went along with the blood draw through to its completion. He never, at any point, gave either the slightest resistance or suggestion that he wished to revoke his consent. Under the legal principles discussed above, defendant's positive cooperation with the blood draw therefore constituted valid Fourth Amendment consent[3]

---

[3] Defendant points out that under section 23612, subdivisions (a)(2)(B) and (C) a person arrested for a drug-related DUI is to be given the choice of a blood test or a breath test, and if he or she chooses a breath test a subsequent blood test may be required. But "California case law unequivocally establishes a police officer's failure to comply with the implied consent law does not amount to a violation of an arrestee's constitutional rights." *(Ritschel, supra,* 137 Cal.App.4th at p. 118.) Officer Robinson's failure to first offer defendant a choice between a blood test and a breath test does not change the fact that by the act of driving defendant

## II. *Even Implied Consent Blood Draws Must Be Performed* **in** *a Reasonable Manner, and the Evidence Here Is Sufficient to Show that Proper Medical Procedures Were Followed*

Defendant is correct that the prosecution was required to show that his blood draw was performed in accordance with accepted medical practices. The People suggest that this requirement only applies to forced blood draws, not those taken cooperatively under the implied consent law, but the Court of Appeal recently held to the contrary that "even if a defendant consents to a blood test under California's implied consent law, such consent does not obviate the requirement that the blood test be conducted in a constitutionally reasonable manner." *(Cuevas, supra,* 218 Cal.App.4th at pp. 1285-86 & fn. 3.)

Nevertheless, we find sufficient evidence in the record to establish that defendant's blood draw was reasonably performed, specifically Officer Robinson's testimony that it was done with defendant's cooperation by a phlebotomist using an ordinary, dry syringe after she had swabbed defendant's arm with what appeared to be a disinfectant, with no indication that medical standards were violated or that the blood draw was painful or involved a risk of infection. (See *Cuevas, supra,* 218 Cal.App.4th at p. 1286; *Sugarman, supra,* 96 Cal.App.4th at p. 216.) "In reviewing the trial court's denial of a motion to suppress evidence, we view the record in the light most favorable to the trial court's ruling, deferring to those express or implied findings of fact supported by substantial evidence." *(People v. Jenkins* (2000) 22 Cal.4th 900, 969.) Accordingly, we need not accept defendant's contrary assertion that the officer was not present to observe the blood draw. Additionally, even if we accept defendant's testimony that he was handcuffed in a holding cell when the blood draw was performed, it does not change the fact that "nothing in this record suggests that the location in which this test occurred was unsafe or

---

specifically consented to a blood test – not a breath *or* blood test – in the event he was lawfully arrested for a drug-related DUI. (§ 23612, subd. (a)(l)(B).)

unsanitary" *(Ford, supra,* 4 Cai.App.4th at p. 37), or that defendant was "subjected ... to any unusual pain or indignity" *(People v. Esayian* (2003) 112 Cai.App.4th I031, 1041).

## DISPOSITION

The order denying defendant's motion to suppress is affirmed.