Filed 9/5/14  P. v. Gartley CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G049235 |
| v. | (Super. Ct. No. 13HF1128) |
| DARRYL LAMMAR GARTLEY, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Frederick P. Aguirre, Judge.  Affirmed.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Scott C. Taylor and Meredith S. White, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

A jury convicted defendant Darryl Lammar Gartley of driving under the influence of a drug (Veh. Code, § 23152, subd. (a), as amended by Stats. 2012, ch. 753, § 1) and being under the influence of a drug (Health & Saf. Code, § 11550, subd. (a)). The trial court sentenced defendant to five years in prison and imposed several fines and fees. Relying on the recent decision in *Missouri v. McNeely* (2013) ___ U.S. ___ [133 S.Ct. 1552, 185 L.Ed.2d 696] (*McNeely*), defendant argues the court erred in denying his pretrial motion to suppress the results of a blood test because his blood was drawn without a warrant. We disagree for two reasons and affirm. First, defendant consented to the drawing of his blood. Second, even if a warrant was required, the deputy sheriff who requested the blood draw reasonably relied on then controlling legal precedent.

FACTS

On April 2, 2013, Orange County Deputy Sheriff Arthur Tiscareno stopped a car driven by defendant after noticing the vehicle's registration tag had expired. Defendant appeared intoxicated. He agreed to a search of the car and Tiscareno found a vial under the floor mat that appeared to have spilled its contents. Using a narcotic identification kit, Tiscareno determined the substance to be Phencyclidine (PCP).

Defendant was transported to a substation where Deputy Sheriff William Simandl, a certified drug recognition expert, evaluated him. Simandl concluded defendant was under the influence of a disassociate anesthetic, a category of drugs that includes PCP, and informed defendant he was under arrest and required to submit to a test of his blood. According to Simandl, when told he would have to submit to a blood draw defendant "made no response."

A licensed vocational nurse was called to obtain the blood sample. Upon her arrival, defendant was asked to sit down. He submitted to the blood draw without

2

resistance.  Simandl testified that if defendant had refused the test, the back of an administrative form used by the sheriff's department would have been completed.

Defendant testified at the suppression hearing.  He admitted using PCP "probably like the day before," but claimed its effect on him lasted only a few hours.  According to defendant, when told his blood was about to be drawn, he stated "'you are not taking my blood'" and "'I don't like needles.'"

In denying the motion to suppress, the trial court concluded defendant consented to the blood draw.  The court found his testimony to be "unreliable," and "I would still believe the officers; that if there were a refusal, at least we'd have the back of the form filled out."  The court stated, "I simply don't see that this was other than a consensual blood draw."  In addition, the court held the deputy sheriffs acted in good faith, noting law enforcement is now aware of "*McNeely*."

DISCUSSION

*1.  Defendant consented to the blood draw.*

Defendant argues the trial court erred in finding he consented to having a sample of his blood drawn for chemical testing.  He claims his mere acquiescence to the procedure was insufficient to show actual consent.  Further, Simandl failed to provide the warning required by California's implied consent law and, in any event, *McNeely* precludes reliance on that statute to support admission of the blood test results at trial.

In the absence of exigent circumstances, the constitutional prohibition on illegal searches requires law enforcement officers to obtain a warrant before drawing blood from a person arrested for driving while intoxicated.  (*McNeely, supra,* 133 S.Ct. at p. 1558.)  One exception to the warrant requirement is a person's consent to the search.  (*People v. James* (1977) 19 Cal.3d 99, 106.)  The requisite consent "may be express or implied, and may be demonstrated by conduct as well as words."  (*People v. Superior*

3

*Court* (2012) 204 Cal.App.4th 1004, 1012.) "The voluntariness of the consent is in every case 'a question of fact to be determined in the light of all the circumstances.'" (*People v. James, supra,* 19 Cal.3d at p. 106; *Schneckloth v. Bustamonte* (1973) 412 U.S. 218, 227 [93 S.Ct. 2041, 36 L.Ed.2d 854] [existence of valid consent "to be determined from the totality of all the circumstances"].)

One factor supporting the consent finding is defendant's operation of the car. Vehicle Code section 23612, subdivision (a)(1)(B) provides "[a] person who drives a motor vehicle is deemed to have given his or her consent to chemical testing of his or her blood for the purpose of determining the drug content of his of her blood, if lawfully arrested for an offense allegedly committed in violation of Section . . . 23152 . . . ." (*People v. Harris* (2014) 225 Cal.App.4th Supp. 1, 8 ["To drive a motor vehicle on the highways of this state is a privilege subject to regulation, not a right . . ., and one such regulation is that any person who does so is statutorily 'deemed to have given his or her consent to chemical testing of his or her blood . . . if lawfully arrested for' DUI"; thus, "By choosing to use the highways, drivers voluntarily bring themselves under the regulation of the implied consent law"].)

Defendant argues this statute is inapplicable because Simandl failed to tell him he could opt for a breath or urine test and that his refusal to submit to testing could result in the suspension of his driver's license. As for the failure to offer a choice of chemical tests, defendant's argument is premised on a former version of the implied consent law. With certain exceptions not relevant in this case, effective as of January 1, 2013, Vehicle Code section 23612 was amended to state a person arrested for driving while under the influence of a drug impliedly consents to a test of his or her blood alone. (Stats. 2012, ch. 196, § 1.) Therefore, Simandl did not err by failing to offer defendant the choice of either a breath or urine test.

On the failure to inform defendant that a refusal could lead to administrative penalties, even he acknowledges this misstep did not violate his

constitutional rights. (*People v. Brannon* (1973) 32 Cal.App.3d 971, 975 ["We fail to perceive . . . how the failure to advise a person of his choice of . . . tests . . . violates any constitutionally protected right"].) Without citing any supporting authority, defendant argues Vehicle Code section 23612 is merely "a legal fiction designed to implement a statutory scheme to suspend the driver's licenses of individuals who are arrested for driving under the influence and do not consent to appropriate chemical testing." Not so. In *Troppman v. Valverde* (2007) 40 Cal.4th 1121, the California Supreme Court recognized the "legislative purpose[s] underlying the implied consent Law [are] . . . '(1) to obtain the best evidence of blood alcohol content while ensuring cooperation of the person arrested, and (2) to inhibit driving under the influence.'" (*Id.* at p. 1136.)

Alternatively, defendant relies on *McNeely* to argue California's implied consent law is unconstitutional. He reasons that, because Missouri also had an implied consent statute, there would have been no need for the court to address whether a warrant was required. However, *McNeely* did not conclude implied consent statutes are unconstitutional. In fact, the court's opinion spoke approvingly of them: "States have a broad range of legal tools to enforce their drunk-driving laws and to secure BAC [blood alcohol content] evidence without undertaking warrantless nonconsensual blood draws. For example, all 50 States have adopted implied consent laws that require motorists, as a condition of operating a motor vehicle within the State, to consent to BAC testing if they are arrested or otherwise detained on suspicion of a drunk-driving offense." (*McNeely, supra,* 133 S.Ct. at p. 1566.) The court continued: "Such laws impose significant consequences when a motorist withdraws consent." (*Ibid.*) If the implied consent law did not create a valid consent, *McNeely's* statement "when the motorist withdraws consent," would be meaningless.

In the context of these statements, we interpret *McNeely* as approving of implied consent laws. But, as noted, the consent can be withdrawn. In *McNeely*, defendant did just that: "the officer explained to McNeely that under state law refusal to

5

submit voluntarily to the test would lead to the immediate revocation of his driver's license for one year and could be used against him in a future prosecution. [Citation.] McNeely nonetheless refused." (*McNeely, supra,* 133 S.Ct. at p. 1557.)

Here, the trial court found that defendant did *not* withdraw his consent and the evidence supports its finding. According to Simandl, when told he was required to submit to a blood test, defendant "made no response." Upon the nurse's arrival, defendant sat down and allowed the nurse draw his blood without the need of any deputy holding his arm. Further, the sheriff's department did not complete the portion of an administrative form used to document an arrestee's refusal to submit to a chemical test.

Defendant testified he verbally objected to the procedure. But the trial court rejected his testimony. On a motion to suppress evidence "the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court," and "[o]n appeal all presumptions favor the exercise of that power . . . ." (*People v. Lawler* (1973) 9 Cal.3d 156, 160.) Thus, we lack the authority to second-guess the court's finding on this issue. (*People v. Leyba* (1981) 29 Cal.3d 591, 596-597.) While defendant was under arrest at the time and Simandl did not expressly inform him of his right to refuse consent, neither fact necessarily invalidates the trial court's finding he voluntarily consented to the blood draw. (*People v. Monterroso* (2004) 34 Cal.4th 743, 758.)

Hence no search warrant was required in this case because defendant consented to the blood draw.

2. *The police reasonably relied on controlling precedent.*

As noted, defendant's arrest and blood draw occurred on April 2, 2013. The Supreme Court issued its decision in *McNeely* on April 17, 2013.

When the police conduct a warrantless search in reliance on established law, the exclusionary rule does not require suppression of the search's results. In *Davis*

6

*v. United States* (2011) 564 U.S. ___ [131 S.Ct. 2419, 180 L.Ed.2d 285], the petitioner was convicted of possession of a firearm by a felon. The police stopped a car in which he was a passenger and removed him from the vehicle. The defendant was then arrested for giving a false name. The police searched the car, locating the weapon. While the petitioner's case was on appeal, the United States Supreme Court issued *Arizona v. Gant* (2009) 556 U.S. 332 [129 S.Ct. 1710, 173 L.Ed.2d 485], which held "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." (*Id.* at p. 501.)

The petitioner in *Davis* claimed that he was entitled to the benefit of this change in the law. The Supreme Court disagreed. "Under our exclusionary-rule precedents, this acknowledged absence of police culpability dooms Davis's claim. Police practices trigger the harsh sanction of exclusion only when they are deliberate enough to yield 'meaningfu[l]' deterrence, and culpable enough to be 'worth the price paid by the justice system.' [Citation.] The conduct of the officers here was neither of these things. The officers who conducted the search did not violate Davis's Fourth Amendment rights deliberately, recklessly, or with gross negligence. [Citation.] Nor does this case involve any 'recurring or systemic negligence' on the part of law enforcement. [Citation.] The police acted in strict compliance with binding precedent, and their behavior was not wrongful." (*Davis v. United States, supra,* 131 S.Ct. at p. 2428; see *United States v. Leon* (1984) 468 U.S. 897, 909-911 [104 S.Ct. 3405, 82 L.Ed.2d 677].)

The same principle applies in our case. When defendant's blood was drawn, the controlling precedent was *Schmerber v. California* (1966) 384 U.S. 757 [86 S.Ct. 1826, 16 L.Ed.2d 908] (*Schmerber*). In *Schmerber*, a police officer arranged for a blood draw from a person arrested for driving while intoxicated. The Supreme Court held the blood sample was properly seized even though the arrestee objected and no search warrant had been obtained. "The officer in the present case, however, might

7

reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of evidence,' [citation]. We are told that the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system. Particularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant. Given these special facts, we conclude that the attempt to secure evidence of blood-alcohol content in this case was an appropriate incident to petitioner's arrest." (*Id.* at pp. 770-771.)

Although *Schmerber* did not hold a search warrant was never required, the opinion recognized the diminishment of an arrestee's blood alcohol level creates an exigency that may justify drawing blood without a warrant. The opinion is, at best, unclear as to whether this fact generally justifies blood draws without a search warrant. But it was generally so interpreted. As both parties acknowledge, California cases decided after *Schmerber*, concluded: "The courts of this state have frequently summarized *Schmerber* as permitting warrantless compulsory seizure of blood for the purpose of a blood-alcohol test if the procedure (1) is done in a reasonable, medically approved manner, (2) is incident to a lawful arrest, and (3) is based upon reasonable belief the arrestee is intoxicated." (*People v. Ford* (1992) 4 Cal.App.4th 32, 35.) Defendant argues the statements of the rule in cases *Ford* cited were frequently in the nature of dicta rather than holdings. Nevertheless it was reasonable for law enforcement to understand the law to be that, when dealing with substances that diminish from the blood stream as time passes, a warrant is not required for a blood draw.

And *People v. Ritchie* (1982) 130 Cal.App.3d 455, a case defendant fails to address, held that under *Schmerber* there was no difference between alcohol and drugs in the tendency to diminish from the blood stream with the passage of time: "The municipal court apparently felt that a distinction exists between the ingestion of alcohol and the

8

ingestion of drugs. We detect no appreciable difference. It is a matter of common knowledge that from the moment of ingestion the body begins to eliminate drugs from the system. While the rate of dissipation may depend on many factors, one, of course, being the type of drug involved, nevertheless, the amount of drug in the blood stream does diminish with the passage of time. The alternative is a lifetime high which may be a desirable result but is hardly consistent with elementary physiology." (*Id.* at p. 458, fn. omitted.) The case concluded no search warrant was required for a blood draw from a person suspected of being under the influence of a drug.

We conclude Simandl reasonably relied on what he understood to be established law in obtaining a blood sample from defendant without first seeking a search warrant.

## DISPOSITION

The judgment is affirmed.


RYLAARSDAM, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.


9